**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

GREGORY KEITH FARRIS,                    Case No. 1:11-cv-258
    Plaintiff                              Beckwith, J.
                                         Litkovitz, M.J.
    vs

COMMISSIONER OF                          **REPORT AND**
SOCIAL SECURITY,                         **RECOMMENDATION**
    Defendant

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI).  This matter is

before the Court on plaintiff's Statement of Errors (Doc. 7) and the Commissioner's response in

opposition.  (Doc. 10).

**I. Procedural Background**

Plaintiff filed applications for DIB and SSI in May 2007, alleging disability since

October 1, 2006, due to anxiety, blood in stool, diarrhea, joint pain and swelling, hernia, stomach

pain with vomiting and mood swings.  Plaintiff's applications were denied initially and upon

reconsideration.  Plaintiff, through counsel, requested and was granted a de novo hearing before

ALJ Robert W. Flynn.  Plaintiff and a vocational expert (VE) appeared and testified at the ALJ

hearing.  On January 26, 2010, the ALJ issued a decision denying plaintiff's DIB and SSI

applications.  Plaintiff's request for review by the Appeals Council was denied, making the

decision of the ALJ the final administrative decision of the Commissioner.

## II. Medical Evidence[1]

Plaintiff presented to Bethesda North Hospital emergency room on November 20, 2006 for evaluation of right elbow pain. Plaintiff reported that the day before he was moving furniture and felt a "pop" in his right elbow. He developed acute pain which progressively worsened. Plaintiff rated his pain at 6/10 but upon examination he rated it at 8/10. Plaintiff noted his pain radiated up to the shoulder and down to his hand and complained of numbness in the right 4th and 5th digits. It was noted that plaintiff worked in construction and drank 6 to 12 beers per day. Plaintiff was able to rotate his arm and flex and extend his elbow, although flexing did cause "pretty significant pain." The emergency room physician found a subtle decrease in sensation in the 4th and 5th digits where plaintiff was complaining of numbness. A right elbow x-ray was normal. Plaintiff was discharged home after he was given pain medication and a sling. (Tr. 197-98).

In December 2006, plaintiff reported to the emergency room two days in a row with complaints of right shoulder pain. Plaintiff's right shoulder was tender and had a reduced range of motion secondary to pain but was otherwise normal. X-rays were normal and plaintiff was diagnosed with right shoulder pain. The emergency room physician made a notation as to plaintiff's drug seeking behavior. Plaintiff was prescribed non-narcotic medication. (Tr. 194-96).

On March 21, 2007, plaintiff went to the emergency room for left wrist pain. Plaintiff's x-rays were normal and he was diagnosed with left wrist pain. Plaintiff was able to slowly rotate the wrist but unable to flex or extend his hand. The emergency room physician gave plaintiff

_____

[1] As plaintiff has not appealed the ALJ's decision with regard to his mental impairments, the discussion of the medical evidence is limited to plaintiff's physical impairments.

2

Vicodin during the visit, but plaintiff complained that Vicodin would not help and he requested a shot of Demerol or morphine. When plaintiff's request for different medication was denied he became very upset and left the emergency room against medical advice. (Tr. 199-202).

On June 14, 2007, state agency physician, Maria Congbalay, M.D., completed a physical residual functional capacity (RFC) assessment based on a review of the emergency room records discussed above. (Tr. 230-37). Dr. Congbalay opined that plaintiff is able to: lift and carry up to 50 pounds occasionally and 25 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; and push and/or pull without limitation. (Tr. 231). She further opined that plaintiff has no postural limitations except that he can only occasionally climb ladders, ropes, and scaffolds and limited plaintiff to frequent handling with his left wrist. (Tr. 232-33). Dr. Congbalay noted that plaintiff's subjective allegations were partially credible because she found nothing in the record related to his complaints of blood in plaintiff's stool, diarrhea, hernia, or stomach pain with vomiting. (Tr. 237). This assessment was affirmed by agency doctor Lynne Torello, M.D., on September 20, 2007. (Tr. 229).

On September 24, 2007, Scott Swope, D.O., reported on his treatment of plaintiff for disability purposes. Plaintiff was seen by Dr. Swope at the Adult Care Clinic through the Warren County Combined Health District on two occasions: August 2, 2007 and August 23, 2007. Plaintiff related a long history of medical problems, mostly including his back and joints - elbows, shoulders, knees - due to multiple episodes of pain. Dr. Swope stated that he had reviewed plaintiff's medical record and noted they were limited to x-rays and emergency room visits and neither related any significant problems. Dr. Swope reported he did not find any major

3

problems with pain, tenderness, or loss of motion on examination. Dr. Swope diagnosed plaintiff with chronic low back pain. (Tr. 228).

In November 2007, Dr. Swope completed a work assessment form based on plaintiff's complaints. Dr. Swope opined that plaintiff was able to occasionally/frequently carry five pounds; was limited to standing/walking for 1 hour and sitting for 1-2 hours in an 8-hour day; and could occasionally stoop and crouch but never climb, balance, kneel, or crawl. Dr. Swope concluded that plaintiff was physically incapable of performing full-time sedentary work and indicated that "lab tests" confirmed these opinions. (Tr. 241-43).

The record also contains a January 24, 2008 work assessment form completed by Charles Hanshaw, D.O., wherein he reported that plaintiff suffered from severe rheumatoid arthritis bilaterally in the upper extremities with back pain. Dr. Hanshaw opined that plaintiff could sit and stand 3 hours each in a work day. Dr. Hanshaw further opined that plaintiff could never climb, balance, stoop, crouch, kneel, and crawl but that he had limitations on reaching, handling, fingering, and pushing/pulling. Dr. Hanshaw noted that his opinion was supported by "RA" – rheumatoid arthritis. (Tr. 245-47).

Plaintiff treated at the Arthritis Clinic at Christ Hospital from May 2009 to September 2009. Initial examination on May 29, 2009, showed synovitis at the PIP (proximal interphalangeal) and MCP (metacarpophalangeal) joints on the fingers and at the elbows, knees, and ankles. (Tr. 265-66). Plaintiff also had an elevated sedimentation rate. (Tr. 273). Plaintiff was diagnosed with "likely RA" on May 31, 2009; the subsequent goal was to improve his treatment with prescription medication, self-injections, and smoking cessation. (Tr. 264, 266). On June 2, 2009, plaintiff had synovitis in all PIP and MCP joints and in the wrists and elbows

along with decreased hand grip. (Tr. 262-63). Treatment notes from August 7, 2009 show that plaintiff was treated with Methotrexate and Prednisone for his rheumatoid arthritis with minimal improvement in his symptoms. (Tr. 261). Plaintiff continued to report arm stiffness and pain in his wrists, hands, knees, and ankles, as well as sharp chest pain. *Id.* After a physical examination, plaintiff was diagnosed with synovitis of the right ankle and a tremor; further, plaintiff exhibited tenderness to palpation in his knee. *Id.* A September 24, 2009 examination revealed visible stiffness and significant pain. (Tr. 259). Treatment notes indicate that plaintiff was scheduled for weekly nurse visits to receive Methotrexate treatments and bi-weekly Humira doses and that he was not responding to Prednisone or oral Methotrexate medications. (Tr. 258).

In May 2009, James Challet, M.D., completed a medical assessment form and listed plaintiff's medical findings as pain, swelling, and warmth of both wrists and MCP joints on both hands attributed to rheumatoid arthritis. Dr. Challet noted that plaintiff used a cane. Dr. Challet opined that plaintiff was: limited to lifting five pounds occasionally/frequently; able to walk for 30 minutes but required a rest after 15 minutes; and capable of occasional balancing, stooping, and crouching but could never climb, kneel, or crouch. Dr. Challet stated that plaintiff was unable to perform the requirements of even full-time sedentary work due to his arthritis. (Tr. 249-51).

The record contains further notes from Dr. Challet's treatment of plaintiff at the Butler County Community Health Center (BCCHC). (Tr. 267-75). These records indicate that plaintiff began treatment at BCCHC in January 2009 for rheumatoid arthritis which he reported feeling in both knees, feet, and ankles, and in his right shoulder. (Tr. 270). February 2009 treatment notes indicate that plaintiff was prescribed Prednisone, Naproxin, Methotrexate, and Percocet. (Tr.

269). In August 2009 plaintiff went for follow-up treatment and complained of nausea and diarrhea. (Tr. 268). April and May 2009 lab tests demonstrate that plaintiff had high sedimentation rates. (Tr. 273-74).

On August 7, 2009, J. Lawrence Houk, M.D., a rheumatologist, examined plaintiff and opined that he had severe synovial swelling of the PIP and MCP joints and of the wrists and elbows along with nodules on the forearms. Dr. Houk noted that plaintiff was taking Prednisone and Methotrexate but he had missed a week of medication. Plaintiff complained of two hours of morning stiffness. Dr. Houk diagnosed plaintiff with severe seropositive rheumatoid arthritis and recommended a new medication given the inefficacy of Prednisone, such as Humira injections that could be monitored to ensure compliance. Dr. Houk concluded that "[plaintiff's] arthritis is quite severe and currently would render him unable to perform most any job activity. I would certainly support his claim for Disability." (Tr. 260).

In August and September 2009, Amber Rasheed Khan, M.D., completed two work assessment forms. (Tr. 238-40; 253-55). Dr. Khan opined that plaintiff could sit and stand one hour; could lift less than 5 pounds; could occasionally climb, balance, stoop, crouch, kneel, or crawl; and was limited in his reaching and handling abilities due to pain from arthritis in the hands and knees. (Tr. 238-40, 253-55). To support these assessments, Dr. Khan noted that plaintiff suffered from severe rheumatoid arthritis in the elbows, wrists, hands, knees, and ankles (Tr. 238) and stiffness of the joints, swelling, and pain in the joints. (Tr. 255).

Plaintiff presented to the emergency room at Lodi Community Hospital on October 5, 2009 with complaints of back pain radiating into his left leg. Plaintiff's examination revealed

6

tenderness to palpation in the lumbosacral region. He was diagnosed with an exacerbation of back pain with radiculopathy and discharged "with a short course prescription." (Tr. 280-85).

On October 10, 2009, plaintiff returned to the emergency room with complaints of back pain. Plaintiff was seeking Percocet, as he claimed Vicodin did not work for him. Plaintiff was given a morphine injection, muscle relaxers, and a few Percocet. He was discharged in stable condition. (Tr. 287-91).

## III. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-

(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the

sequential evaluation process. *Id.*; *Wilson* v. *Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

2004). Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2008.

2. The claimant has not engaged in substantial gainful activity since October 1, 2006, the alleged onset date (20 C.F.R. 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: rheumatoid arthritis, dysthymic disorder, and polysubstance abuse (20 CFR 404.1520(c) and 416.920(c))

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), meaning that he can lift up to 20 pounds occasionally and frequently lift or carry 10 pounds and can make it through eight hours of sitting, standing, and walking with normal breaks, except that he must be allowed to sit or stand at will every hour. The claimant can frequently push and pull within his lifting restrictions and can frequently exercise foot controls. He cannot climb ladders, ropes, or scaffolds, and can only occasionally climb ramps or stairs, balance with a handheld device, stoop, crouch, kneel, or crawl. The claimant can frequently reach and reach overhead, handle, and finger. He requires the use of a handheld device at all times when walking. The claimant must avoid concentrated exposure to extreme cold, extreme heat, and humidity, and he must avoid all exposure to unprotected heights and use of moving machinery. He is limited to work involving simple, routine, and repetitive tasks in a low stress environment, which is defined as an environment free of fast-paced production requirements involving only simple work-related decisions and with few, if any, workplace changes.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born [in] . . . 1964 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2006 through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 12-20).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was

10

otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ erred in weighing the various medical opinions of record and in formulating plaintiff's RFC; (2) the ALJ erred in evaluating plaintiff's use of a cane in formulating his RFC assessment; and (3) the ALJ erred by relying on the VE's testimony.

    1. <u>The ALJ erred in weighing the medical opinions of some of plaintiff's treating physicians.</u>

Plaintiff contends that the ALJ's decision did not contain a sufficient rationale for discounting the weight of his treating and examining physicians and, further, the ALJ erred in formulating plaintiff's RFC by not accommodating all of his impairments.  Plaintiff asserts that the opinions put forth by his treating and examining physicians, Dr. Swope, Dr. Challet, Dr. Hanshaw, Dr. Khan, and Dr. Houk, support a more limited RFC than that adopted by the ALJ. Lastly, plaintiff argues that the ALJ's RFC determination fails to accommodate his need to use a cane for standing, as well as walking, which precludes him from all work.

The ALJ decided to give "some weight" to the opinions of the non-examining agency physicians; "little weight" to plaintiff's treating and examining physicians, Dr. Swope, Dr. Hanshaw, Dr. Challet, and Dr. Khan; and "no weight" to the opinion of one-time examining rheumatologist Dr. Houk.[2]  Plaintiff contends that the terms used by the ALJ, "some weight" and

---

[2] Dr. Houk examined plaintiff at the Christ Hospital Arthritis Clinic (Tr. 260) and the Commissioner does

"little weight," are impermissibly vague given the Commissioner's duty to provide specific, "good reasons" when weighing medical opinions under 20 C.F.R. § 404.1527 and Social Security Ruling (SSR) 96-2p.[3] The undersigned finds that, with respect to this distinct issue, the ALJ's decision comports with the applicable regulations and rulings governing how the Commissioner is to weigh medical opinions of record.

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Sec'y of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c)[4]; *Harris*, 756 F.2d 431 (6th Cir. 1985). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic

---

not dispute that Dr. Houk's specialty area is rheumatology. Consequently, the record sufficiently demonstrates that Dr. Houk is a rheumatology specialist for purposes of evaluation his medical opinion under 20 C.F.R. §§ 404.1527(c) and 416.927(c).

[3] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1). In *Wilson,* 378 F.3d at 549, the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but *assumed* that they are. [The Court] makes the same assumption in this case." *Ferguson v. Comm'r of Soc. Sec.,* 628 F.3d 269, 272 n.1 (6th Cir. 2010) (emphasis in original).

[4] Regulations 20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion were previously found at §§ 404.1527(d) and 416.927(d).

12

techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Walters*, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Sec'y of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walters*, 127 F.3d at 529; *Shelman*, 821 F.2d at 321.

"A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.' 20 C.F.R. § 404.1502. A physician seen infrequently can be a treating source 'if the nature and frequency of the treatment or evaluation is typical for [the] condition.' *Id.*" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

If the ALJ does not give the treating source's opinion controlling weight, then the ALJ must consider a number of factors when deciding what weight to give the treating source's opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). These factors include the length, nature and

extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Wilson,* 378 F.3d at 544. The ALJ must likewise apply the factors set forth in § 404.1527(c)(3)-(6) and § 416.927(c)(3)-(6) when considering the weight to give a medical opinion rendered by a non-treating source. 20 C.F.R. §§ 404.1527(c), 416.927(c). When considering the medical specialty of a source, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

To the extent that plaintiff makes a semantic argument regarding the ALJ's use of the terms "some weight" and "little weight," this argument is not well-taken. The terms "significant weight," "some weight," and "little weight" are commonly used by ALJs in disability decisions when weighing medical opinions. This District has previously recognized that when an ALJ gives "significant weight" to a medical opinion, that means it is given more than "some weight" or "little weight." Likewise, assigning "some weight" to a medical opinion indicates that the ALJ is giving it more than a "little weight." *See, e.g., Moore v. Comm'r of Soc. Sec.*, No. 10-cv-916, 2012 WL 254139, at *12 (S.D. Ohio Jan. 27, 2012) (Report and Recommendation), *adopted*, 2012 WL 529778 (S.D. Ohio Feb. 17, 2012); *Lambert ex. rel. Lambert v. Astrue*, No. 3:10-cv-435, 2012 WL 37389, at *8 (S.D. Ohio Jan. 9, 2012) (Report and Recommendation),

*adopted*, 2012 WL 966060 (S.D. Ohio March 21, 2012). Thus, the ALJ's opinion sufficiently details that he has given more weight to the opinions of the state agency reviewing physicians by giving them "some weight," than to the opinions of plaintiff's treating and examining physicians, on which he placed "little weight" or "no weight." Moreover, the ALJ's determination to give less weight to the opinions of Dr. Swopes and Dr. Hanshaw is supported by substantial evidence.

The ALJ explained that his decision to give "little weight" to Dr. Swope's opinion was due to inconsistencies and contradictions in his treatment records and that the opinion was largely based on plaintiff's self-reports and not supported by "medically acceptable clinical findings or laboratory diagnostic techniques." (Tr. 16). A review of the record supports the ALJ's decision. The limited evidence of plaintiff's treatment with Dr. Swope consists of a September 24, 2007 report noting that plaintiff was treated on two occasions in August 2007 and a November 2007 work assessment form. (Tr. 241-43; 228). The September 2007 report largely relates plaintiff's subjective complaints of pain, Dr. Swope's diagnosis of chronic back pain, and examination findings of no major problems with pain, tenderness, or loss of motion. (Tr. 228). Further, Dr. Swope noted that his review of plaintiff's records, including x-rays and emergency room notes, revealed no major problems. *Id*. Notwithstanding these examination results, Dr. Swope limited plaintiff to carrying five pounds, standing/walking for 1 hour, and sitting for 1-2 hours in an 8-hour day. Yet, each of Dr. Swope's limitations were prefaced by the notation "Patient says," implying that the limitations were based on plaintiff's subjective statements to Dr. Swope. (Tr. 241-43). As the ALJ reasonably noted, there is no clinical evidence from Dr. Swope to support his limitations - only notations in his November 2007 assessment that "lab

15

tests" confirmed his opinion. *Id*. While plaintiff argues that 2008 and 2009 diagnostic tests revealed elevated sedimentation rates and synovitis, Dr. Swope's opinion was not based on this evidence and the ALJ was not required to give his opinion any greater weight due to its lack of supporting evidence. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.") (internal citations and quotations omitted). Further, as the ALJ identified, Dr. Swope's opinion on plaintiff's limitations contradicts his September 2007 report that plaintiff's medical records revealed no significant problems. The ALJ properly noted the subjective nature of Dr. Swope's opinion, the lack of substantiating objective evidence, and the internal contradictions in determining to afford the opinion "little weight." *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Harris*, 756 F.2d 431 (6th Cir. 1985). The ALJ's determination to give "little weight" to Dr. Swope's opinion is substantially supported by the record.

Likewise, the ALJ's determination to give "little weight" to Dr. Hanshaw's opinion is justified by its lack of supporting evidence. The only evidence of record from Dr. Hanshaw is a work assessment form completed in January 2008 in which he diagnosed plaintiff with severe rheumatoid arthritis and back pain. (Tr. 245-47). Dr. Hanshaw opined that plaintiff was limited to sitting and standing three hours each in an eight-hour workday; was unable to climb, balance, stoop, crouch, kneel, and crawl; and had limitations on reaching, handling, fingering, and pushing/pulling. *Id*. The evidence Dr. Hanshaw cited to in support of his opinion was that plaintiff had rheumatoid arthritis. *Id*. The Sixth Circuit has held that "the mere diagnosis of arthritis, of course, says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d

16

860, 863 (6th Cir. 1988); *see also Henry v. Gardner,* 381 F.2d 191, 194 (6th Cir. 1967) ("The

fact that a person is suffering from a diagnosed disease or ailment is not sufficient in the absence

of proof of its disabling severity to warrant the award of benefits."). Due to the lack of

supporting evidence of record substantiating Dr. Hanshaw's opinion, the ALJ's decision to

afford it "little weight" based solely on a diagnosis of arthritis is substantially supported. *See*

*Buxton,* 246 F.3d at 773; *Ball,* No. 09-cv-684, 2010 WL 5885538, at *7.

However, the ALJ's decision to discount the opinion of Dr. Challet is without substantial

support in the record. Dr. Challet completed a medical assessment form in May 2009 and opined

that plaintiff was: limited to lifting five pounds occasionally/frequently; able to walk for 30

minutes but required a rest after 15 minutes; capable of occasional balancing, stooping, and

crouching but could never climb, kneel, or crouch. (Tr. 249-51). The medical support cited by

Dr. Challet for his opinion was that plaintiff walked with a cane, had swelling in his wrist, knees,

and ankles, and had rheumatoid arthritis. *Id.* The ALJ's rationale for giving "little weight" to

this opinion was that it was not supported by "acceptable clinical findings and laboratory

diagnostic techniques" and was "inconsistent with other substantial evidence." (Tr. 17). Yet, a

review of the record demonstrates that there are treatment notes and diagnostic testing results

from Dr. Challet that were not discussed in the ALJ's decision.

Plaintiff treated with Dr. Challet at the BCCHC from January to August 2009 for

symptoms associated with his rheumatoid arthritis. *See* Tr. 268-75. These treatment notes

contain plaintiff's subjective reports and documentation of his prescription medication

management, specifically his prescriptions for Prednisone, Naproxin, Methotrexate, and

17

Percocet. *Id.* Also included in these records are April and May 2009 results from blood tests showing that plaintiff had high sedimentation rates.[5]  (Tr. 273-74).

When an ALJ fails to mention relevant evidence in his decision, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Morris v. Secretary of Health & Human Servs.,* Case No. 86–5875, 1988 WL 34109, at * 2 (6th Cir. Apr. 18, 1988) (quoting *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981)).  The ALJ's opinion makes no mention of these treatment records from Dr. Challet which contradict his finding that Dr. Challet's opinion was unsupported by clinical findings.  Given the ALJ's silence, the Court cannot discern from the instant record whether the ALJ overlooked, ignored, or rejected these records.  As a result of this omission, the ALJ committed an error law when he failed to comply with his duty to weigh Dr. Challet's opinion in accordance with 20 C.F.R. § 404.1527(c) and to give good reasons for the ultimate weight given to plaintiff's treating physician.  *Blakley*, 581 F.3d at 407.  Because the ALJ provided no explanation for not addressing these records, which directly contradict his finding that there was no clinical evidence presented in support of Dr. Challet's opinion, remand is required to allow the ALJ to fully consider these records.  *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 750 (6th Cir. 2007).

With respect to Dr. Khan, the ALJ similarly afforded her opinions "little weight" because they allegedly were not supported by clinical evidence and were inconsistent with other substantial record evidence. (Tr. 17).  Dr. Khan opined that plaintiff was unable to sit or stand

---

[5] For example, in May 2009, plaintiff's sedimentation rate was 54 as compared to normal rates of 0 to 15. (Tr. 273).

18

for more than one hour each; was limited to lifting and carrying no more than five pounds; and was limited in his reaching and handling abilities due to pain from arthritis. (Tr. 238-40, 253-55). Plaintiff asserts that these limitations are supported by findings that plaintiff had inflammation of the wrist, hand, and elbows (Tr. 250-51), stiffness, swelling, and pain in his joints (Tr. 255), elevated sedimentation (Tr. 273), and synovitis of the fingers, knees, and ankles and decreased hand grip pursuant to examination. (Tr. 263). The Commissioner argues that, to the extent that this medical evidence demonstrates that plaintiff has limitations in his abilities to reach, handle, and manipulate, the ALJ accommodated plaintiff by limiting him to only frequently engaging in these activities. The undersigned finds that the ALJ's decision to give "little weight" to Dr. Khan's opinion is without substantial support because, as with Dr. Challet, the ALJ failed to address portions of Dr. Khan's treatment records and, further, failed to comply with the requirements of 20 C.F.R. §§ 404.1527(c) and 416.927(c) for evaluating medical opinion evidence.

When the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406. In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight afforded the treating physician's opinion, based on the evidence in the record, and the reasons must be sufficiently specific to enable meaningful review of the ALJ's decision. *Id*.

(citing former 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 WL 374188, at

*5, *Wilson*, 378 F.3d at 544). The ALJ's failure to adequately explain the reasons for the weight

given a treating physician's opinion "*denotes a lack of substantial evidence*, even where the

conclusion of the ALJ may be justified based upon the record." *Blakley*, 581 F.3d at 407

(emphasis in the original and quoting *Rogers*, 486 F.3d at 243).

> In affording "little weight" to the opinions of Dr. Khan, the ALJ provided:

> [Dr. Khan's] opinion [as expressed in the August and September 2009 assessments] is not well supported by medically acceptable clinical findings or laboratory diagnostic techniques. It is also inconsistent with other substantial evidence. It appears that Dr. Khan also completed a third assessment in the record, again in September 2009 (Exhibit 11F, pp. 2-4), which is given little weight for the same reasons. In two of these assessments Dr. Khan reported that the claimant can only sit for an hour or less either at one time or total during the course of an eight hour day. The [plaintiff] sat throughout the hearing for a period of time longer than this without any visible signs of discomfort.

(Tr. 17). The justifications given by the ALJ for discounting Dr. Khan's opinions fail to satisfy

the "good reasons" standard set forth by the Sixth Circuit in *Wilson*. First, the ALJ stated that

Dr. Khan's opinions were "not well supported by medically acceptable clinical findings or

laboratory diagnostic techniques." *Id*. However, the record demonstrates that Dr. Khan was

treating plaintiff at the Christ Hospital rheumatology clinic.

Dr. Khan's August 2009 treatment notes include findings that plaintiff required weekly at

home nurse visits to receive Methotrexate medication as well as bi-weekly Humira treatments at

the clinic and that examination results demonstrated that plaintiff was positive for synovitis and

had a tremor. (Tr. 258, 261). September 2009 notes include: examination results that plaintiff

was very stiff and in significant pain; Dr. Khan's findings that plaintiff had synovitis and

rheumatoid nodules; and Dr. Khan's notations regarding laboratory results[6] and plaintiff's

unresponsiveness to medication.  (Tr. 259).  The ALJ did not discuss these records, which belie

his finding that Dr. Khan's opinions were not supported by acceptable clinical findings or

laboratory diagnostic techniques.  Consequently, his decision to discount Dr. Khan's opinions is

not substantially supported and this matter should be remanded with directions to the ALJ to

appropriately consider all of Dr. Khan's records.  *See Bowen*, 475 F.3d at 750.

     Further, these records from Dr. Khan are marked "Rheumatology" and were combined

with the records from the rheumatology clinic at Christ Hospital, where plaintiff was treated by

Dr. Houk, a rheumatology specialist, suggesting that Dr. Khan was treating plaintiff in

coordination with Dr. Houk at the clinic as a specialist.  Under the regulations, the opinions of

medical specialists relating to their specialization area are generally given more weight than the

opinions of non-specialists.  20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).  Although the record

does not include a listing of Dr. Khan's credentials, it is fairly clear that she treated plaintiff in

connection with the rheumatology clinic.  Further, the State Medical Board of Ohio identifies

that Dr. Khan specializes in rheumatology.  *See* https://license.ohio.gov/Lookup/SearchDetail.a

---

[6] The laboratory results from Dr. Challet were sent to the Christ Hospital Rheumatology Clinic via fax.
*See* Tr. 271.  Consequently, it can be inferred that Dr. Khan and Dr. Houk took plaintiff's high sedimentation rate
findings into account in formulating their opinions.  The Commissioner argues that in his decision finding that Dr.
Khan's opinion was unsupported clinical evidence, the ALJ "was simply pointing out that, although given the
opportunity," Dr. Khan did not identify these findings in her assessments.  (Doc. 10, p. 10).  This argument is not
well-taken.  The ALJ's decision clearly states that Dr. Khan's opinion is not supported by "medically acceptable
clinical findings and laboratory diagnostic techniques[;]" however, it is clear from the record that her opinion is
supported by the lab results from Dr. Challet as well as Dr. Khan's own findings upon examination - evidence which
the ALJ's failed to address in weighing Dr. Khan's opinion.

sp?ContactIdnt=3735217&DivisionIdnt=78&Type=L (last visited April 19, 2012).[7]  The ALJ's

decision does not reflect that the ALJ considered Dr. Khan's specialty area as required by the

regulations.  As Dr. Khan was both plaintiff's treating physician and a rheumatology specialist,

she was most definitely in a better position to assess the severity of plaintiff's rheumatoid

arthritis than the non-examining agency physicians and the ALJ erred by failing to address Dr.

Khan's treatment relationship and specialty area in his decision to afford her opinion "little

weight."  *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

Moreover, Dr. Khan was most certainly more qualified to assess how plaintiff's

rheumatoid arthritis limited his abilities than the ALJ, who stated that Dr. Khan's opinion that

plaintiff can only sit for an hour or less during an eight-hour day was contradicted by the ALJ's

own observation that the plaintiff "sat throughout the hearing for a period of time longer than this

without any visible signs of discomfort."  (Tr. 17).  Plaintiff's purported ability to sit for a length

of time during his hearing does not equate to an ability to do so on a sustained basis for eight

hours a day, five days a week.  Further, the ALJ's "observation" of plaintiff's sitting ability is

belied by the hearing transcript.  The hearing commenced at 2:12 p.m. (Tr. 27) and was closed at

2:56 p.m. (Tr. 52), indicating that the ALJ only had the opportunity to observe plaintiff for 44

minutes.  The transcript further demonstrates that plaintiff requested to stand part way through

giving his testimony.  (Tr. 36).  Thus, the record does not support the ALJ's assertion that he

---

[7] This Court may take judicial notice of online records maintained by the State.  *See Holmes v. Back Doctors, Ltd.*, No. 09-540-GPM, 2009 WL 3425961, at *2 n.3 (S.D. Ill. Oct. 21, 2009), *vacated in part on other grounds*, 695 F. Supp.2d 843 (S.D. Ill. Mar. 12, 2010).  See also Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.")

observed plaintiff engaging in activity for longer periods than he was capable of according to Dr. Khan's opinion.

Lastly, although, as discussed *supra*, the ALJ's finding that Dr. Khan's opinion was unsupported by objective and/or clinical evidence is contradicted by the record, even if this were not the case, the ALJ's decision is lacking. The ALJ failed to identify any evidence in the record supporting his statement that Dr. Khan's opinions "are inconsistent with other substantial evidence." (Tr. 17). This failure to identify the contradicting "substantial evidence" leaves this Court without an evidentiary basis to assess the ALJ's finding. Simply stating that Dr. Khan's opinion is "inconsistent with other substantial evidence" does not make it so. The ALJ's failure to discuss the relevant evidence, identify the evidence supporting his findings, or apply the regulatory factors of §§ 404.1527(c)(5) and 416.927(c)(5) in deciding to afford greater weight to the opinions of the non-examining agency physicians than to plaintiff's treating rheumatology specialist "denotes a lack of substantial evidence." *Blakley*, 581 F.3d at 407.

Plaintiff further argues that the ALJ erred by giving "no weight" to the opinion of Dr. Houk. Dr. Houk diagnosed plaintiff with active and severe seropositive rheumatoid arthritis despite Prednisone treatment and his examination revealed severe synovial swelling throughout plaintiff's proximal and metacarpal phalanges (PIPs and MCPs, or fingers), wrists, and elbows, as well as nodules over plaintiff's forearm. (Tr. 260). Dr. Houk stated that plaintiff's severe arthritis "would render him unable to perform most any job activity." (Tr. 260). The ALJ gave "no weight" to Dr. Houk's opinion that plaintiff could not work because it failed "to give any function by function analysis of [plaintiff's] various physical abilities," and was a determination

on the ultimate issue of plaintiff's disability which is reserved to the Commissioner. (Tr. 17).
Plaintiff asserts that Dr. Houk's opinion should be given more weight because of his
specialization area in rheumatology and because his examination findings support his opinion.

As an initial matter, the Court acknowledges that Dr. Houk's opinion plaintiff is
incapable of full-time employment is not entitled to any deference since "[i]t is well settled that
the ultimate issue of disability is reserved to the Commissioner." *Kidd v. Comm'r of Soc. Sec.,*
283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Comm'r of Soc. Sec.,* 280 Fed. App'x 472,
475–76 (6th Cir. 2008); 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). However, the ALJ's
decision fails to reflect he considered Dr. Houk's medical specialty in rejecting his opinion as
required by 20 C.F.R. §§ 404.1527(c)(5) and 416.927(c)(5). For the reasons stated above in
connection with the weight afforded to Dr. Khan's opinion, the ALJ's failure to take into account
Dr. Houk's role as a rheumatology specialist contravenes his duties under the regulations.

In addition, as an examining physician, Dr. Houk should have been given greater weight
than the non-examining agency physicians under the circumstances of this case. *See* 20 C.F.R.
§§ 404.1527(c)(1) and 416.927(c)(1) ("Generally, we give more weight to the opinion of a
source who has examined you than to the opinion of a source who has not examined you.").
While the opinion of a state agency medical source "may be entitled to greater weight than the
opinions of treating or examining sources . . . if the State agency medical or psychological
consultant's opinion is *based on a review of a complete case record*[,]" Social Security Ruling
96-6p, the opinions of the non-examining agency physicians in this case were based on an
incomplete record. The state agency doctors rendered their opinions in June and September

24

The state agency doctors rendered their opinions in June and September

2007 and, consequently, failed to consider the medical evidence from 2008 and 2009, which include the blood test results from Dr. Challet as well as the arthritis treatment notes from Christ Hospital.

Lastly, although Dr. Houk did not provide a "function by function" analysis of plaintiff's limitations, the treatment notes from the Christ Hospital arthritis clinic, where plaintiff was treated by Dr. Houk and Dr. Khan, contain reports of plaintiff's symptoms, progress on medication, and blood test results. (Tr. 256-66). Moreover, Dr. Khan's medical assessments – which do provide function-by-function limitations - were based on records from the arthritis clinic, including Dr. Houk's examination findings. (Tr. 253-55; 276-78). In any event, the ALJ's rejection of Dr. Houk's report due to its lack of a "function by function" analysis concerns only the form of the report, as opposed to its substance. There is no requirement in the regulations or Social Security Rulings that a medical source opinion must provide a "function by function" analysis, nor does the lack of such an analysis provide a proper basis for an opinion's outright rejection. *See Rivers v. Astrue*, No. 1:08-cv-1824, 2009 WL 1160259, at *15-16 (N.D. Ill. Apr. 29, 2009) (holding that medical sources are not required to provide detailed function by function RFCs but otherwise upholding the ALJs decision because "the ALJ thoroughly considered both medical and non-medical evidence."). Here, the ALJ did not engage in a thorough discussion of the evidence but, rather, rejected Dr. Houk's findings and opinion based solely on the lack of a "function by function" analysis. This is not a "good reason" for rejecting the opinion of a medical source who is a specialist in rheumatology, whose opinion was based on a review of the complete record, and whose examination findings provided substantial support

25

for other RFC assessments of record.  The ALJ's decision to reject Dr. Houk's examination and opinion lacks substantial support in the record.

For these reasons, the ALJ's decision should be reversed and remanded with instructions to re-evaluate the record to:  consider the treatment notes from Dr. Challet; weigh the opinions of Dr. Challet, Dr. Khan, and Dr. Houk in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c); and formulate a new RFC accordingly.  In light of this finding, the Court declines to reach plaintiff's second assignment of error as the ALJ will be required to reassess plaintiff's RFC on remand, including consideration of plaintiff's use of a cane,  in accordance with this Report and Recommendation.

The undersigned recommends that plaintiff's third assignment of error be sustained. Plaintiff asserts that the ALJ improperly relied upon flawed testimony from the VE because the ALJ's hypothetical questions to the VE were premised on an RFC that failed to accommodate all of plaintiff's limitations.  As the Court has determined that the ALJ's RFC finding is not supported by substantial evidence for the reasons stated above, it follows that the ALJ's reliance on VE testimony based thereon is also in error.

**IV. Conclusion**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that remand is appropriate where the ALJ failed to consider evidence of record.  *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).  Here, the ALJ failed to consider evidence from Dr. Challet or the fact that Dr. Khan's assessment was based on records from the Christ Hospital arthritis clinic.  In addition, the current

record does not adequately establish plaintiff's entitlement to benefits as of his alleged onset date.[8]  Accordingly, this matter should be remanded for further proceedings, including reconsideration of the opinions of Dr. Challet, Dr. Khan, and Dr. Houk; reassessment of plaintiff's RFC; and elicitation of testimony from a VE consistent with this decision.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 4/30/2012

Karen L. Litkovitz
United States Magistrate Judge

---

[8] Plaintiff acknowledges that he did not have many restrictions on working from October 1, 2006, his alleged onset date, until September 2007, when his impairments increased in severity. (Doc. 7 at 2).

27

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

GREGORY KEITH FARRIS,           Case No. 1:11-cv-258
     Plaintiff                     Beckwith, J.
                               Litkovitz, M.J.

     vs

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

28